# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: AUGUST 20, 2015
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2014-SC-000742-MR

DATE 9-10-15 Elia Grawth P.C

JACK GORE                                                        APPELLANT

V.
ON APPEAL FROM BELL CIRCUIT COURT
HONORABLE ROBERT COSTANZO, JUDGE
NO. 12-CR-00327

COMMONWEALTH OF KENTUCKY                                         APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A Bell Circuit Court jury found Appellant, Jack Gore, guilty of third-degree burglary and found him to be a first-degree persistent felony offender. The jury recommended that Appellant be sentenced to twenty years' imprisonment and the trial court sentenced him accordingly. Appellant now appeals as a matter of right, Ky. Const. § 110(2)(b), and raises the following issues: (1) the trial court erred in denying Appellant's motion for a mistrial during voir dire and (2) the trial court erred in denying a continuance to investigate alleged juror misconduct.

## I. BACKGROUND

The facts surrounding the burglary for which Appellant was convicted are not at issue in this appeal. We will discuss the facts surrounding Appellant's allegations of error below in our analysis.

## II. ANALYSIS

### A. Mistrial

Appellant first argues that his motion for a mistrial should have been granted after the following exchange occurred during voir dire:

> Prosecutor: Okay, now sometimes we stand up here and ask you a ton of questions and we hope that we've asked everything. But, you might be sitting there thinking, "I know something that, if she knew, she would know I am not the right person to sit on this jury." So, if there's anybody who has anything like that? Um, okay, Juror 6? Okay, is this something you wanna just tell the judge or is it something you—?

> Juror #6: I dispatched for three years for the Middlesboro Police Department and I might have been working there at the time of the offense.

> Prosecutor: Okay. That. Okay. So you don't have actual knowledge of the case?

> Juror #6: I've not been there for about six months and I worked there for three years prior.

> Prosecutor: Okay. Um. Since you might have actual knowledge of the case—um—I'm assuming it would be difficult for you to give a fair trial to both sides, since you might actually know something about the case—is that correct?

> Juror #6: I don't really recall anything, but, it's a possibility that I do know something. I don't know what.

> Prosecutor: Okay.

> Juror #6: I don't really remember anything, but, I just think that you guys need to know.

> Prosecutor: Your Honor, since—um—this juror—we may get into the facts and she may recall actual things from the case—um—I would ask that she be excused.

> Judge: As you sit here right now, you have no recollection of—?

Juror #6: I know who he is, but, I don't know anything really about the details.

Judge: All right. You will be excused. Thank you.

Appellant's counsel objected to the jury panel on the grounds that Juror #6's statements tainted the panel and asked for a mistrial. Trial counsel argued "[i]t is equal to hearsay testimony coming from the jury." Appellant now argues Juror #6's statements "implied that she had received phone calls regarding him in her work as a police dispatcher. This information should not have been provided to the jury at large and improperly implied that [Appellant] was a known trouble maker in the community." Appellant insists this issue would have been avoided if the juror had been asked to approach the bench rather than being questioned in front of the entire panel.

Appellant argues he was denied a fair and impartial trial and that granting a mistrial was the only way for the trial court to remove the prejudicial effect of Juror #6's statements. *Bray v. Commonwealth*, 177 S.W.3d 741, 752 (Ky. 2005) *overruled on other grounds by Padgett v. Commonwealth*, 312 S.W.3d 336 (Ky. 2010) ("The error must be 'of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way [except by grant of a mistrial].'") (quoting *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 738 (Ky.1996)). Furthermore, Appellant argues that the juror's statements were inadmissible character evidence under KRE 404(b), as they constituted "[e]vidence of other crimes, wrongs, or acts . . . ."

3

"Our precedent provides that a defendant must show actual or implied prejudice which tainted the jury pool. *Shegog v. Commonwealth*, 142 S.W.3d 101, 110 (Ky. 2004). The trial court must then exercise discretion in determining improper tainting of a panel of prospective jurors. *Maxie v. Commonwealth*, 82 S.W.3d 860, 862 (Ky. 2002)." *Blackburn v. Commonwealth*, 394 S.W.3d 395, 396 (Ky. 2011). "We review [Appellant's claim] for abuse of discretion. *Tabor v. Commonwealth*, 948 S.W.2d 569, 571 (Ky.App.1997) ("The trial court has broad discretion in determining whether a jury panel should be dismissed, and its ruling should not be disturbed absent a clear abuse of discretion.")." *King v. Commonwealth*, 374 S.W.3d 281, 288 (Ky. 2012).

In *Blackburn*, 394 S.W.3d 395, the appellant argued that she was denied her right to trial by an impartial jury when two different potential jurors made statements in front of the entire panel. When the trial court asked members of the jury pool if they knew the appellant, one potential juror said "I was a social worker in the state of Kentucky for thirty years. But it's been like twenty-something years ago I was her case worker." *Id.* at 397. That was the extent of that juror's statement—he did not elaborate as to why the appellant needed a social worker. The second potential juror who acknowledged his acquaintance with the appellant in that case stated, "I'm a police officer here in town. I know [the appellant]." Again, he did not elaborate on the nature of his knowledge of the appellant.

We held:

4

> We do not consider either of the responses given by the jurors to be prejudicial. The "social worker" juror did not explain why Appellant needed a social worker, while the "police officer" juror did not elaborate on the nature of his relationship with Appellant. Simply put, the prospective jurors did not convey enough information about their involvement with Appellant which could conceivably yield actual or implied prejudice amongst the jury pool. Accordingly, we cannot say the trial court abused its discretion in declining to dismiss the pool and impanel a new jury.
>
> Because the trial court did not abuse its discretion with respect to its management of the jury pool, we affirm Appellant's convictions.

*Id.* Appellant here points out that the issue was unpreserved in *Blackburn* and that palpable error analysis is a different standard than that of abuse of discretion. However, this Court did not use palpable error analysis in *Blackburn*, but spoke clearly in terms of whether the trial court had abused its discretion. In fact, we stated, "[w]e find no error, palpable or otherwise." *Id.* at 396.

Juror #6's statements in the case at bar are far less prejudicial than those of the social worker and police officer in *Blackburn*. Here, the potential juror merely stated that she was working as a dispatcher at the time of the offense. While she did not recall any specifics, she wanted to make the parties aware of her circumstances. When the judge asked her if she had any recollection, she responded that "I know who he is, but I don't know anything really about the details." Appellant insists that this created an insinuation that the juror knew who Appellant was through her job as a police dispatcher and that it implied he was a trouble maker in the community. We disagree. Just as with the social worker and police officer in *Blackburn*, the potential juror

5

here did not give any details of her knowledge of Appellant in front of the jury panel.

We affirm the trial court on this issue, as Appellant failed to "show actual or implied prejudice which tainted the jury pool." *Shegog*, 142 S.W.3d at 110. The trial court did not abuse its discretion in denying Appellant's motion for a mistrial.

### B. Continuance

On the day of sentencing, Appellant was represented by stand-in counsel. When the trial court asked if there was any reason to delay sentencing, stand-in counsel responded that that he had been informed by Appellant's trial counsel of irregularities with the jury. Specifically, stand-in counsel alleged that one of the members of the jury had previously dated Appellant's father. On that basis, he asked for more time before Appellant's final sentencing. Appellant now argues trial counsel wanted more time in order to investigate these allegations, but that was never explicitly stated in the trial court.

The day of sentencing was the first time the trial court heard of the potential issue; however, the Commonwealth had been alerted to the matter more than ten days prior. The Commonwealth asked stand-in counsel if he had any evidence of this purported relationship. Stand-in counsel responded that he did not and that he was just attempting to get it on the record. The Commonwealth pointed out that no investigation had been attempted nor had any affidavits or motions been filed in the ten days since it was made aware of

6

the potential issue. As such, the trial court denied Appellant's request for more time.

Appellant now argues that the trial court erred in failing to grant his motion for a continuance in violation of his rights to present a defense, due process of the law, and to an impartial jury. We review a trial court's denial of a motion for a continuance under the abuse of discretion standard. *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991) *overruled on other grounds by Lawson v. Commonwealth*, 53 S.W.3d 534 (Ky. 2001).

Kentucky Rules of Criminal Procedure 9.04 provides:

> The court, upon motion and sufficient cause shown by either party, may grant a postponement of the hearing or trial. A motion by the defendant for a postponement on account of the absence of evidence may be made only upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it. If the motion is based on the absence of a witness, the affidavit must show what facts the affiant believes the witness will prove, and not merely the effect of such facts in evidence, and that the affiant believes them to be true. If the attorney for the Commonwealth consents to the reading of the affidavit on the hearing or trial as the deposition of the absent witness, the hearing or trial shall not be postponed on account of the witness's absence. If the Commonwealth does not consent to the reading of the affidavit, the granting of a continuance is in the sound discretion of the trial judge.

We assume that Appellant bases his argument on the "absence of evidence." However, Appellant did not comply with the dictates of the Rule. Here, by the time of the sentencing hearing, more than ten days had elapsed since the Commonwealth was first made aware of these purported irregularities with the jury. During that time, Appellant neither filed a motion for a continuance nor

obtained any affidavits showing the materiality of the evidence he expected to gather. In short, he did not use due diligence in investigating the allegations.

We dealt with a similar matter under RCr 9.04 in *Gray v. Commonwealth*, 203 S.W.3d 679 (Ky. 2006). While that case dealt with an absent witness rather than missing evidence, the appellant had, likewise, failed to comport with the requirements of RCr 9.04 We held:

> It is not error to deny a continuance where the affidavit does not comply with the provisions of RCr 9.04. *McFarland v. Commonwealth*, 473 S.W.2d 121, 122 (Ky.1971).
>
> . . . . At no point did counsel make a proper motion for continuance as required by RCr 9.04. The trial counsel failed to show upon affidavit what the witness would say. He failed to establish that the witness would give substantial favorable evidence. Thus, the trial court properly denied counsel's request that the penalty phase be continued. Simply put, there was no abuse of discretion.

*Id.* at 689. In *Gray*, just as in the present case, the appellant's argument was based upon factors set out in *Snodgrass*, 814 S.W.2d at 581 ("length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice"). However, the *Gray* Court did not delve into the individual factors, as the appellant there—much like Appellant in the present case—failed to comport with RCr 9.04 in order to show sufficient cause for the continuance. Thus, neither trial court abused its discretion.

Though we have already held that there is no abuse of discretion, we will address Appellant's other arguments on this matter. Appellant posits that, pursuant to *Commonwealth v. Wood*, 230 S.W.3d 331, 333 (Ky. App. 2007), the trial court should have held an evidentiary hearing and questioned the jurors regarding any prior relationships with Appellant's father. In *Wood*, the Court of Appeals relied on *Mattox v. United States*, 146 U.S. 140 (1892), and a Sixth Circuit case applying *Mattox, Doan v. Brigano*, 237 F.3d 722, 732 (6th Cir. 2001), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003). However, in *Wood*, our Court of Appeals pointed out the difference between the sorts of issues for which it is appropriate to set aside a jury verdict and those for which it is not. As the *Doan* Court explained: "[t]he [*Mattox*] Court stated that it would not give the 'secret thought[s] of one [juror] the power to disturb the expressed conclusions of twelve.' In sharp contrast to the secret thoughts of jurors, the Court held that juror testimony as to 'overt acts' of misconduct can be considered because the remaining members of the jury can testify as to whether or not those acts of misconduct actually occurred." *Doan*, 237 F.3d at 732. In *Woods*, our Court of Appeals relied upon this reasoning to affirm a trial court's receipt of testimony from a juror regarding the use of a dictionary in the jury room. That was clearly an "overt act" that other members of the jury could testify about. There is no such act here about which other members of the jury panel could testify and Appellant's reliance upon *Wood* is, therefore, misplaced.

Appellant next points us to *Sluss v. Commonwealth*, 381 S.W.3d 215, 221 (Ky. 2012), in support of his position that "[f]ailing to respond to open-

9

ended questions has been held to be grounds for reversal for an evidentiary hearing where 'jurors may have lied by omission when they failed to respond to the general *voir dire* question about whether they knew anyone involved in the case.'" In *Sluss*, the appellant presented the trial court with screenshots of the murder victim's mother's Facebook page indicating that she was friends with persons having the same names as two of the jurors. We ultimately sent the case back to the trial court for a hearing to determine whether the two jurors' "answers during voir dire were false" and to determine "whether they should have been struck for cause." *Id.* at 229. There is a key difference in the case at bar, however, that readily distinguishes it from *Sluss*: a complete lack of evidence in support of the motion for a continuance.

In *Sluss*, "[e]vidence was presented after trial . . ." in the form of Facebook screenshots which seemed to indicate that two of the jurors lied in their answers during voir dire. *Id.* at 221. Appellant presents no such evidence in this case. He could have presented an affidavit from his father that he had previously dated one of the jurors, but he did not. He did not even present the court with the name of the juror in question or with any other identifying information. Appellant had known of these allegations for a minimum of ten days prior to his final sentencing hearing. However, he made no move during that time to gather evidence to present to the trial court. Rather, he asked for more time on the basis of a mere allegation.

Appellant never filed a formal motion for a continuance with affidavits showing sufficient reason for the trial court to grant said motion. As previously

stated, the trial court did not abuse its discretion in failing to allow Appellant more time before his final sentencing.

## III. CONCLUSION

For the foregoing reasons, we affirm Appellant's convictions and sentence.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Jason Apollo Hart, Assistant Public Advocate

COUNSEL FOR APPELLEE:

Jack Conway, Attorney General of Kentucky
Leilani K. M. Martin, Assistant Attorney General